IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 24-cr-00326-PAB-5

UNITED STATES OF AMERICA,

    Plaintiff,

v.

5.    JOSE ARTURO GARCIA-SANCHEZ,

    Defendant.

## ORDER

This matter is before the Court on that portion of the government's Emergency Motion for Stay and Revocation of Release Order [Docket No. 18], wherein the government asks the Court to revoke the release order entered by the Western District of Texas after defendant's arrest there in late November 2024. The defendant has filed a response. Docket No. 56.

On November 7, 2024, the grand jury returned an indictment against the defendant in this District. Docket No. 1. An arrest warrant was issued for defendant on the same date. Docket No. 6. Defendant was arrested on the warrant in the Western District of Texas and had his initial appearance on November 21, 2024. Docket No. 18 at 2. On December 3, 2024, the defendant had a contested identity hearing and detention hearing before Magistrate Judge Miguel A. Torres. *Id*. Magistrate Judge Torres ordered that defendant be released on bond with conditions. *Id*. The United States Attorney's Office for the Western District of Texas orally moved

to stay Magistrate Judge Torres' order so the United States Attorney's Office in the District of Colorado could file a motion for revocation of the release order. *Id*. The United States Attorney's Office for the District of Colorado did so on December 3, 2024. Docket No. 18. On December 4, 2024, the Court granted that portion of Docket No. 18 seeking a stay. Docket No. 19.

The Court construes the government's motion as a request to revoke the release order pursuant to 18 U.S.C. §§ 3145(a) and (b), which permit the government to file a motion for revocation of a release order. *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003); *see* Docket No. 18 at 3.

### A. Factual Background

The government makes an offer of proof in its motion. Docket No. 18 at 4-6. The Court has also considered the testimony of Special Agent Stephanie Nuno of the Drug Enforcement Administration ("DEA"), who testified at the hearing in the Western District of Texas. The government invokes the rebuttable presumption of detention pursuant to 18 U.S.C. § 3142(e)(3)(A) based on that fact that Mr. Garcia-Sanchez is charged in Count 1 of the indictment with a crime punishable by a maximum term of imprisonment of ten years or more. *Id*. at 4.

The government's offer of proof indicates that the defendant was born in Delicias, Chihuahua, Mexico, in March 1980 and became a naturalized U.S. citizen in 2019. *Id*. at 7. Mr. Garcia-Sanchez resides with his wife and two of his three children in a home he owns in San Elizario, Texas. *Id*. Mr. Garcia-Sanchez admitted to the pretrial services department in El Paso that he crosses into Ciudad Juarez, Chihuahua, Mexico,

two to three times per week for work purposes.   *Id*.   Mr. Garcia-Sanchez claimed he is self-employed and transports vehicles between several states and imports vehicles to Mexico.   *Id*.   Although multiple members of the defendant's family reside in the United States, his wife's side of the family resides in Mexico.   *Id*. at 7-8.

The defendant's criminal history includes an arrest and deferred probation for Forgery to Defraud or Harm Another in El Paso, Texas; an arrest and conviction for Possession of Marijuana with Intent to Distribute which resulted in nine months supervised probation in Alamogordo, New Mexico; and an arrest for DWI in El Paso, Texas, which was dismissed after deferred disposition.   *Id*. at 8.   The defendant has a warrant for failure to appear on a traffic violation in Alamogordo, New Mexico, from 2017, and two warrants from the Municipal Court-City of El Paso which were issued on February 13, 2023 and June 20, 2023.   *Id*.   Based on a review of border crossing records, a case agent involved in the investigation estimates the defendant made approximately 30 trips to Mexico in the six weeks before his arrest.   *Id*.

Based on an 18-month investigation into a Chihuahua, Mexico-based drug trafficking organization, the government believes that the defendant conspired with others to distribute and possess with the intent to distribute at least 14 kilograms of cocaine.   *Id*. at 5.   Specifically, the government proffers that the defendant operated a stash house in the El Paso, Texas area which he used to receive shipments of cocaine from Mexico and then load cocaine into vehicles with hidden compartments so the cocaine could be distributed to other cities throughout the United States, including Denver, Colorado.   *Id*.

The DEA's investigation shows the defendant and his brother-in-law (the brother of

the defendant's wife) loaded a red Ford Fusion automobile with seven kilograms of cocaine, which cocaine was later seized during a traffic stop in Douglas County, Colorado on June 7, 2022, which is corroborated by statements from the courier who was caught with the cocaine, data from the courier's phone, and phone records which show contact between the courier and the defendant and the defendant's brother-in-law. *Id*.

DEA agents in Colorado obtained a federal wiretap for the defendant's phone. *Id*. Agents heard the defendant discussing his cocaine trafficking activities with his brother-in-law, including trying to get their boss in Mexico to set them up with a new location to receive and load cocaine because their old location was apparently receiving too much attention from law enforcement. *Id*. The defendant spoke of couriers complaining about their location, including a different courier who was later caught with several kilograms of cocaine in Colorado on August 5, 2023 as part of the investigation. *Id*.

As a result of coordination with the investigative team in Colorado, El Paso, Texas DEA agents were surveilling the defendant on February 28, 2023. *Id*. at 5-6. Some of Mr. Garcia-Sanchez's calls and text messages led agents to believe he was going to conduct a cocaine transaction. *Id*. at 6. In particular, the defendant told his brother-in-law that their source in Mexico was going to provide them with some product through a new arrangement to "break the ice." *Id*. While the agents watched the defendant, the defendant met with an as-yet unidentified individual. *Id*. After the deal, the defendant eventually spotted several law enforcement officers and became worried. *Id*. He expressed this to his brother-in-law on the phone. The DEA agents asked a

uniformed officer in a marked car to pull the defendant over.  *Id*.  When the officer tried to do so, the defendant fled and led officers on a chase.  *Id*.  While being chased, the defendant described what was happening on phone calls with his brother-in-law and his wife.  *Id*.  Agents intercepted those calls on the federal wiretap in Colorado.  *Id*.  The defendant told his wife, "[i]t's just that I went and picked up something, sweetie.  They are chasing me.  I will call you back shortly."  *Id*. at 8.  When he called her back, he told her that he was now safe with her brother and instructed her that, if police show up at the house, she should tell them that he is in Guadalajara, Mexico on a business trip.  *Id*. at 8-9.  The defendant's wife showed concern that he was being chased by the police, but she did not seem worried about the reason the police were chasing him or the fact that he was asking her to lie to the police on his behalf.  *Id*. at 9.  While being pursued, the defendant threw a red Door Dash bag out the window of his truck.  *Id*. at 6.  He gave his brother-in-law directions to the bag, but DEA agents seized the bag from the street and discovered that it contained seven kilograms of cocaine.  *Id*.  The defendant was not apprehended that day because officers lost track of him and stopped pursuing him.  *Id*.

    In Mr. Garcia-Sanchez's response to the government's motion, the defendant offers the following background facts.  Mr. Garcia-Sanchez lives in the United States, in San Elizario, Texas, a small suburb outside of El Paso, Texas.  Mr. Garcia-Sanchez is a United States citizen and has lived in the United States for the last 28 years.  Docket No. 56 at 3.  Mr. Garcia-Sanchez is married to Blanca Garcia, who is also a United States citizen.  *Id*.  The couple have three sons who are United States citizens.  *Id*.

5

Their oldest son is Jonathan Garcia, is a mechanical engineer who works on ships for the United States Navy. *Id*. The middle son is Joshua Garcia, who is 21 years old and who has just joined the Coast Guard. *Id*. Joshua is graduating from the Coast Guard Academy on January 31, 2025. *Id*. Their youngest son is Jacob Garcia, a 19-year-old student at the University of Texas at El Paso. *Id*. Mr. Garcia-Sanchez works three jobs. *Id*. First, he works with his biological brother as a welder, with a company called MAG Welding. *Id*. Second, he works for a fueling company called Midnight Suns, which sells fuel wholesale to other companies. *Id*. Finally, he works for San Hurst Technologies, a company that handles shipping logistics for vehicles. *Id*. Mr. Garcia-Sanchez controls the shipment of vehicles from state to state or at times from a state to Mexico. *Id*.

### B. Analysis

A district court reviews a magistrate judge's detention or release order de novo and makes "an independent determination of the proper pretrial detention or conditions for release." *Cisneros*, 328 F.3d at 616 n.1 (citation omitted). Pretrial detention is governed by 18 U.S.C. § 3142. Under 18 U.S.C. § 3142(f), the facts that a judicial officer uses to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person or the community must be supported by clear and convincing evidence. The United States must prove flight risk by a preponderance of the evidence. *Cisneros*, 328 F.3d at 616. Given the possible penalty if the defendant were convicted of Count 1 of the indictment, Docket 1 at 1-2, this case involves a rebuttable presumption that no condition or combination of

conditions will reasonable assure the safety of any other person or the community or the defendant's appearance.  However, even with the rebuttable presumption, the government retains the burden of proof.  *Id*.

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," 18 U.S.C. § 3142(g), the Court must take into account the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . [or] a Federal crime of terrorism . . .;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id*.

The Court agrees with the government that no conditions of release will reasonably assure the appearance of Mr. Garcia-Sanchez and the safety of any other person and the community.  First, the nature of the offense charged in the indictment against Mr. Garcia-Sanchez and the government's investigation demonstrate by clear and convincing evidence that the defendant poses a danger to the community.

Although Mr. Garcia-Sanchez argues that identification was contested at the December 3, 2024 hearing, Docket No. 56 at 2, the magistrate judge found that the government established the defendant's identity.   Moreover, the Court finds, based on the testimony of Special Agent Nuno and the government's proffer, Docket No. 18 at 4-9, that the defendant has operated a stash house in El Paso, Texas which he has used to receive shipments of cocaine from Mexico and then to load vehicles with that cocaine in order for the cocaine to be distributed to locations in Denver, Colorado and elsewhere. The Court also finds, based on the proffer and the testimony of Special Agent Nuno, that on February 28, 2023 the defendant received a shipment of cocaine in El Paso, Texas.   When a marked police car attempted to stop the car the defendant was driving, the defendant evaded the police car and, as evidenced by intercepts of his telephone calls to his wife and brother-in-law during the chase, threw the bag containing the cocaine out of the window.   The defendant told his brother-in-law where to find the bag. However, given that the DEA agents were monitoring the call, they arrived at the location of the bag first and seized it, discovering that it contained approximately seven kilograms of cocaine.   The Court agrees with the government that the defendant's involvement of his family members during the chase, and his wife's apparent lack of concern with the defendant being pursued by the police or being asked to lie to the police, increase the chance that the defendant, if released on bond, will continue to pose a risk of danger to the public and will pose a risk of nonappearance at court hearings.   The Court concludes that, although the defendant has good jobs and has raised three impressive sons, the defendant has not rebutted the presumption of

detention in this case. However, even if the defendant had rebutted the presumption, the Court finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant. The defendant has close ties to Mexico, both because of his work and because of his wife's family, which raise the risk of his non-appearance given the possible term of imprisonment were he to be convicted. The Court also finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. There is a substantial risk that the defendant, if released, will continue to distribute cocaine, thereby posing a danger to the community. Accordingly, the Court orders that the December 3, 2024 order of release is revoked and that the defendant be detained without bond.

Wherefore, it is

**ORDERED** that portion of the government's Emergency Motion for Stay and Revocation of Release Order [Docket No. 18] is GRANTED. It is further

**ORDERED** that defendant Jose Arturo Garcia-Sanchez's December 3, 2024 order of release is revoked. It is further

**ORDERED** that defendant Jose Arturo Garcia-Sanchez be detained without bond.

DATED: January 24, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge